ST. LOUIS & C. R. Co. *v.* THOMAS *et al.*

(*Circuit Court, S. D. Illinois.* February 9, 1888.

EMINENT DOMAIN—TRANSFER-BOAT LANDING.
 Act Ill. July 1, 1887, known as the "Water-Craft Act," provides that all railroad companies having a terminus upon any navigable river bordering on that state shall have power to own for their own use any water-craft necessary in carrying across such river any cars, etc., "provided that no right shall exist under this act to condemn any real estate for a landing for such water-craft, or for any other purpose. And this act shall only apply to such railroad companies as own the landing for such water-craft." *Held,* that a rail-

road company whose road terminated on the Ohio river at Cairo could not condemn land for an incline track and transfer ferry-boat landing, in order to connect with another railroad company.

Condemnation Proceedings. On motion for rehearing.

*John M. Lansden, A. Leek,* and *Greene & Humphrey,* for petitioner, and resisting motion.

*Brown, Wheeler & Brown,* and *John M. Butler,* for defendants, and also for the motion.

Before GRESHAM and ALLEN, JJ.

GRESHAM, J., (*orally.*) This proceeding was commenced by the St. Louis & Cairo Railroad Company and the Mobile & Ohio Railroad Company, in the old Wabash case against Thomas and Tracy, trustees of the Cairo, Vincennes & Chicago Railroad Company and the Cairo Transfer Company, to condemn a piece of land on the bank of the Ohio river, at Cairo, for an incline track and transfer ferry-boat landing. We have given such consideration to the questions arising on the petition for a rehearing as the limited time justified, and are prepared to announce our conclusion.

One of the objections urged against the proceeding is based upon what is known as the "Water-Craft Act," passed by the legislature of Illinois on July 1, 1877. So much of that act as it is material to notice reads thus:

"Be it enacted by the people of the state of Illinois represented in the general assembly, that all railroad companies incorporated under the laws of this state having a terminus upon any navigable river bordering on the state shall have power to own for their own use any water-craft necessary in carrying across such river any cars, property, or passengers transported over their line, or transported over any railroad terminating on the opposite side of such river, to be transported over their line: provided, that no right shall exist under this act to condemn any real estate for a landing for such water-craft, or for any other purpose. And this act shall only apply to such railroad companies as own the landing for such water-craft."

This act confers upon Illinois railroad corporations terminating upon navigable rivers along the border of the state the right to own and operate transfer boats between the opposite sides of such rivers. The St. Louis & Cairo Railroad Company owns a line of road terminating on the Ohio river at Cairo, and the Mobile & Ohio Railroad Company owns a line of road terminating on the same river immediately opposite; and the former company needs, or supposes it needs, land at Cairo upon which to construct its track down to the river, and for a landing, from which it may run its cars upon boats to be transferred to the Mobile & Ohio road on the opposite side of the river, and to enable it to receive the cars of that company. The question is whether land can be acquired by the petitioner for this purpose by condemnation. If this act governs this case, —and it seems to me that it does,—the petitioner cannot own a transfer ferry-boat, unless it also owns a landing; and it is not permitted to own the land for a landing unless it acquires it by purchase. Why the legislature denied to corporations thus situated the right to acquire land by

condemnation for a necessary purpose we do not know, nor is it material to inquire. It is sufficient to say that the legislature was authorized to pass such an act, and the courts must enforce it.

The facts stated in the petition seem to bring the case squarely within the statute; indeed, the act seems to have been passed with reference to the conditions which now exist at Cairo. I doubt if similar conditions exist elsewhere on the border of Illinois. As already stated, the road of the petitioner terminates at Cairo. It does not need the land in controversy except for the purpose of constructing an incline, and a landing for transfer boats. It is not contended that additional terminal facilities are needed for any other purpose. I find no difficulty in agreeing with the counsel for the petitioner on all other points discussed in the argument. Under the Illinois statutes, the petitioner and the Mobile & Ohio Company are authorized to consolidate; and, but for the act of 1877, I should feel inclined to hold that the petitioner might condemn the land in controversy, and own transfer ferry-boats, solely for the purpose of transferring cars from one side of the river to the other. In *Railroad Co.* v. *Railroad Co.*, 13 N. E. Rep. 141, the supreme court of Illinois held that the right of way of a railroad company in Illinois could be condemned and appropriated by another railroad company, under the statutes of that state, only to the extent of crossing or intersecting. The land in controversy is not part of the right of way of the Cairo, Vincennes & Chicago Railway Company.

Judge ALLEN is not yet prepared to hold that the act of 1877 is an obstacle to the prosecution of this proceeding, but he has such doubts upon the question that he has united with me in allowing a rehearing.

ALLEN, J. I am not satisfied that the water-craft act of 1877 presents an insuperable objection to the condemnation of the strip of land sought to be condemned under the eminent domain rule. The St. Louis & Cairo Railroad, having established a business connection with the Mobile & Ohio Railroad, seems entitled to facilities to transfer cars over the Ohio river. I have sufficient doubt on this question, however, to induce me, in view of its great importance, to concur in sustaining the motion for a rehearing, in order that the question may receive further and more mature consideration.